**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| FAHRAN ROBB, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 20-0929 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 8, 16 |
| | : | | |
| TOM VILSACK, Secretary,[1] | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND; GRANTING IN
PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

## I.  INTRODUCTION

Plaintiff Fahran Robb is an employee of the United States Department of Agriculture

("the Department"), and brings this action against Tom Vilsack in his official capacity as

Secretary of the Department (the "Secretary" or "Defendant").  She alleges that the Secretary

violated the Rehabilitation Act, 29 U.S.C § 12101, *et. seq*., Title VII, 42 U.S.C § 2000e *et. seq*.,

and the Equal Protection and Due Process clauses of the Fifth Amendment by failing to

accommodate her disability and engaging in acts of disability and gender-based discrimination

and retaliation.  The Secretary has moved to dismiss the complaint in part, arguing that (1) Ms.

Robb failed to exhaust her administrative remedies as to certain of her claims, (2) that Ms.

Robb's attempt to contest the revocation of her security clearance is non-justiciable, and (3) that

many of the actions Ms. Robb seeks to challenge do not constitute discrimination or retaliation,

as they are not sufficiently adverse to rise to this level.  In the meantime, Ms. Robb has requested

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Mr. Vilsack is automatically
substituted for former Secretary Sonny Purdue.

leave to file an amended complaint, a move the Secretary opposes.  While the Court finds that select claims in Ms. Robb's proposed amended complaint are futile as they fail to qualify as adverse acts of discrimination or retaliation, the majority of Ms. Robb's claims survive.  Ms. Robb's motion to amend and the Secretary's motion to dismiss are therefore granted in part and denied in part.

## II.  FACTUAL BACKGROUND[2]

### A.  Ms. Robb's Background and Employment at the Department

Plaintiff Ms. Robb joined the Department in November 2013, as a GS-14, Step 1 Senior Agricultural Scientific Advisor (Biofuels), in the Office of Global Analysis, Global Policy Analysis Division, Foreign Agricultural Service.  *See* Proposed Am. Compl. ("Am. Compl.") ¶¶ 16–17, ECF No. 16-2.  In this position she was responsible for the "analysis and communication of science and Agency policy of bio-based products."  *Id*. ¶ 18.  In December 2015, Ms. Robb was notified that her position was being unexpectedly terminated, so she accepted a GS-13 position as an Agricultural Economist, a non-biofuels position and one in a lower pay grade.  *Id.* ¶¶ 20–21.  However, just a few months later, Ms. Robb was notified that there was a need for her at her old position, and that she could return to her former role.  *Id.* ¶ 22. She was told that while the original reassignment would initially be at the GS-13 level, the job would eventually be elevated to a GS-14 position, the same pay grade it had been before.  *Id.* ¶¶ 23–24.  She accordingly accepted the reassignment on May 15, 2016.  *Id.* ¶ 26.  In the interim, the biofuels trade policy had been transferred within the Department from the Office of Global Development to the Plant Division.  *Id.* ¶ 30.  As a result, in her new role, Ms. Robb was

---

[2] On a motion to dismiss for failure to state a claim, the Court accepts as true the factual allegations in the complaint and construes them liberally in the plaintiff's favor.  *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

overseen by Mayra Caldera, her first line supervisor, while her second line supervisor was Mark Rasmussen, the Director of the Plant Division.  *Id.* ¶¶ 27–28.  Despite the assurances she had received, Ms. Robb's new position as International Economist (Biofuels), was never elevated back to a GS-14 position.  *Id.* ¶¶ 23–25.

**B.  Alleged Acts of Discrimination, Retaliation, and Failure to Accommodate Ms. Robb's Disability**

1.  Warnings and Discipline Directed at Ms. Robb

Ms. Robb contends that beginning in February of 2017, less than a year after she accepted her new position with the promise of an eventual grade increase, "management went on a campaign to intimidate, devalue, and degrade" her.  *Id.* ¶ 60.  She claims that this retaliation started after she requested a desk audit to account for why she had never received her promised GS-14 grade elevation.  *Id.* ¶ 61.  In early May 2017, Ms. Robb requested a review of her position description.  *Id.* ¶ 62.  She claims that she was retaliated against for this request in a number of ways, including unfair criticism in her 2017 performance review as well as physical intimidation and assault by her second line supervisor, Mr. Rasmussen.  *Id.* ¶ 63.

Soon thereafter, Ms. Robb claims that she was "effectively demoted" in order to prevent her from obtaining her "rightful" GS-14 position, with certain duties removed from her set of responsibilities.  *Id.* ¶¶ 36–37.  They included reducing her meetings with industry and other government officials, as well as a reduction of her usual participation in certain portfolio issues involving "Brazil, China, Japan, India, U.S. RFSII, Expert RINS, and the Biofuture Platform portfolios."  *Id.* ¶ 37; *see also id.* ¶¶ 37–43.  Phillip Jarell, a male co-worker of Ms. Robb (who possessed a GS-15 grade position) was selected to attend these biofuel meetings instead, despite having "far less experience and knowledge" than Ms. Robb.  *Id.* ¶¶ 42–43.  The Department

contends that the shift in these responsibilities was due to the majority of biofuel work being transferred from the OASA Plant Division to the OASA Office of the Deputy Administrator, the division where Mr. Jarrell worked.  *Id.* ¶¶ 40, 42.  In September of 2017, Ms. Robb filed a complaint contesting the removal of these responsibilities as well as arguing that she deserved the GS-14 position that had still not been awarded to her.  *Id.* ¶ 44.

The next month, Ms. Robb was told by her second line supervisor, Mr. Rasmussen, that she was "a young inexperienced lady, [and that] Phil Jarrell had all the experience in biofuels and that was the reason Phil was being inserted in [her] position."  *Id.* ¶ 47.  Not long thereafter, she was told twice by Ms. Caldera, her immediate supervisor, to "watch out or else your credibility is going to be ruined."  *Id.* ¶ 52.

On November 1, 2017, Ms. Robb had an incident with her coworker, Julie Chao, who occupied the adjoining cubicle to Ms. Robb's workspace.  *Id.* ¶¶ 65–66.  Ms. Robb was injured in an automobile accident in 2008, and as a result, experiences intermittent severe neck and back pain, which at times requires that she lie down to stretch her back.  *Id.* ¶¶ 11, 14.  That day, Ms. Robb was experiencing back pain, and as a result laid down in the aisle of her workspace in an attempt to alleviate the pain.  *Id.* ¶ 97.  This action effectively blocked Ms. Chao from accessing her workstation.  *Id*.  Ms. Robb maintains that Ms. Chao expressed sympathy for her pain, told her not to move, and then proceed to step over her.  *Id.* ¶ 99–102.  Ms. Chao, however, went on to report Ms. Robb to management, complaining that Ms. Robb refused to move and told her to climb over her body.  *Id*. ¶ 98.

On November 13, 2017, management launched an investigation into the incident, denied Ms. Robb access to her office, and placed her on full-time telework.  *Id.* ¶¶ 49–51, 105, 107.  On December 8, 2017, Ms. Robb was issued a letter of caution purportedly for leaving Mr.

Rasmussen's office during a discussion of Ms. Chao's complaint, and for refusing to attend another earlier meeting on this topic.  *Id.* ¶¶ 112–13, 121.  Ms. Robb disputes this characterization of events, and claims that during the initial meeting in question Mr. Rasmussen harassed her by "sticking his leg in between her legs . . . while she was sitting in a chair" which "block[ed] her in the chair unable to escape."  *Id.* ¶ 122.

A second letter of caution was issued to Ms. Robb on March 8, 2018, after she refused to consolidate her files at her supervisor's request, a directive Ms. Robb disobeyed because she believed it would destroy evidence relevant to her discrimination complaint.  *Id.* ¶¶ 124–28.  On May 29, 2018, Ms. Robb was issued a letter of reprimand after two other employees claimed she called them a "bitch," an accusation Ms. Robb asserts never occurred.  *Id.* ¶¶ 129–32.  On February 25, 2019, the department suspended Ms. Robb for five days after she refused to return a copy of her performance evaluation and for failure to attend a meeting.  *Id.* ¶¶ 135–49.  Ms. Robb claims she missed the meeting because she was ill, and asserts that she only waited to return the copy of her performance evaluation because she wanted her attorney to review it, as she believed her scores were lowered in an act of retaliation for her Equal Employment Opportunity Commission ("EEOC") complaint.  *Id.*  On March 11, 2019, management proposed to suspend Ms. Robb for continuing to contact the Office of Capacity Building and Development regarding moving her work station, despite being instructed to not do so.  Compl. ¶ 160, ECF No. 1.[3]  This proposed suspension never came to pass.

In April of 2019, Ms. Robb submitted a request to complete a Graduate School certification program in Federal Human Resources Management, a certification she asserts "would have aided [her] in regaining her GS-14 because the GS-14 positions typically involve

---

[3] This allegation has since been removed from Ms. Robb's proposed amended complaint.

supervising direct reports.  Am. Compl. ¶¶ 158–59.  That same month, she alleges that the

Department falsified her time sheet, depriving her of eighteen hours of leave valued at

approximately $1,108.88.  *Id.* ¶ 160.  Finally, on March 2020, the Department proposed the

termination of Ms. Robb's employment.  *Id.* ¶¶ 237–38.

### 2.  Suspension of Ms. Robb's Security Clearance

Ms. Robb was notified on April 2, 2019 that her security clearance was being suspended

as a result of the disciplinary actions taken against her.  *Id.* ¶¶ 161–62.  As a result, she would no

longer have access to classified national security information.  *Id.*  Ms. Robb contends that this

suspension was retaliation for the report she filed with the Office of the Inspector General.  *Id.* ¶

168.

### 3.  Ms. Robb's Request for a Keyboard Tray to Accommodate Her Disability

In the midst of these alleged acts of discrimination and retaliation, Ms. Robb also claims

that management at the Department acted to unnecessarily delay awarding her a reasonable

accommodation for her disability to which she was entitled.  *Id.* ¶¶ 64–92.  On August 7, 2017,

Ms. Robb requested that she be given a keyboard tray as her current desk set up did not

accommodate her musculoskeletal disorder, because it prevented her from stretching her feet

while also keeping her monitor too low.  *Id.* ¶¶ 67–68.  Mr. Rasmussen (who managed this

situation because Ms. Caldera, Ms. Robb's first line supervisor was out of the office), did not

order the agreed upon keyboard tray until September 26, 2017, almost two months later.

*Id.* ¶¶ 69–71.  The keyboard tray then did not arrive until October 23, 2017, and was not installed

until November 7, 2017.  *Id.* ¶¶ 73–74.  Ms. Robb now contends that if the keyboard tray had

been installed promptly, she never would have experienced back pain the morning of November

1, 2017, which compelled her to lie down in the aisle and instigated Ms. Chao's complaint against her. *Id*. ¶ 77.

Furthermore, once Ms. Robb returned from her mandated full time telework in April 2018, she found the selected keyboard tray unsuitable given that it had metal legs that "cut into her legs." *Id*. ¶¶ 81–83. Ms. Robb reached out to Ms. Caldera several times in an attempt to remedy the issue, but her calls were never picked up. *Id*. ¶ 84. Even though there were empty desks Ms. Robb could have been moved to, the Department required Ms. Robb to have an ergonomic evaluation conducted at her workstation, and then suggested that as a solution that she should telework. *Id*. ¶¶ 86–90. Ms. Robb declined that request as depriving her of valuable face time with her colleagues. *Id*. ¶¶ 90. A new keyboard tray was not ordered until May 2, 2018, and not installed until May 23, 2018. *Id*. ¶¶ 91–92.

### C.  Procedural History

Ms. Robb complained to the Department's EEO Office of Civil Rights on or around December 14, 2017. *Id*. ¶ 213. She filed a formal complaint on March 2, 2018. *Id*. ¶ 214. The matter was referred for investigation on August 10, 2018, *see* Def.'s Mot. to Dismiss Ex. 10 ("Aug. 10, 2018 Letter"), ECF No. 8-11, and in November of 2018, Ms. Robb requested an EEOC hearing. However, in both March and May of 2019, Ms. Robb sought to bring additional claims against the Department, including a challenge to her five-day suspension, the denial of her graduate school training request, and the alleged time sheet falsification. *See* Compl. Ex. 1 ("March 26, 2019 Letter"), ECF No. 1-1; Def.'s Mot to Dismiss Ex. 14 ("May 12 Email"), ECF No. 8-15; *see also* Am. Compl. ¶ 215 (noting Ms. Robb filed additional EEO actions on March 22, 2018, May 9, 2018, July 13, 2018, August 1, 2018, March 26, 2019, and June 1, 2019). The Department construed these requests as a request for amendment, which it denied, noting that the

Report of Investigation had been issued, and directing Ms. Robb to file the amendment request with the administrative judge overseeing her complaint or to pursue a new complaint. *See* Def.'s Mot. to Dismiss Ex. 16, ECF No. 8-17; *id.* at Ex. 17, ECF No. 8-18.

The EEOC remanded this matter back to the Department on October 24, 2019 for a final agency decision. This decision, which was issued on January 22, 2020, found no discrimination or harassment. Def.'s Mot. to Dismiss Ex. 15 ("Final Decision") at 30, ECF No. 8-16. Ms. Robb filed suit in this Court on April 7, 2020, asserting claims for failure to accommodate in violation of the Rehabilitation Act, disability discrimination in violation of the Rehabilitation Act, gender discrimination in violation of Title VII, retaliation for engaging in protected activity in violation of both the Rehabilitation Act and Title VII, and a Fifth Amendment due process claim for reputational damage. *See generally* Compl; Am. Compl.

The Secretary has now moved to dismiss the complaint. *See* Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 8. Ms. Robb has filed an opposition, *see* Pl.'s Opp'n to Def.'s Mot. Dismiss ("Pl.'s Opp'n"), ECF No. 15, and the Secretary has filed his reply, *see* Def.'s Reply in Supp. Mot. Dismiss ("Def.'s Reply"), ECF No. 20. Additionally, after the Secretary filed his Motion to Dismiss, Ms. Robb moved to amend her complaint. *See* Pl.'s Mot. to Amend Compl. ("Pl.'s Mot. Amend"), ECF No. 16, an action the Secretary opposes, *see* Def.'s Reply in Supp. of Def.'s Mot. Dismiss and Opp'n to Pl.'s Mot. Amend ("Def.'s Opp'n Amend"), ECF No. 21. Both motions are now ripe for consideration.

### III.  LEGAL STANDARD

#### A.  Legal Standards for Motion to Dismiss

To prevail on a motion to dismiss for failure to state a claim, a plaintiff need only provide a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair

notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits, but rather "tests the legal sufficiency of a complaint" by asking whether the plaintiff has properly stated a claim for which relief can be granted. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In considering such a motion, the complaint must be construed "liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged."  *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555–56 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678.  A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations.  *See Twombly*, 550 U.S. at 555.

"In determining whether a complaint fails to state a claim, [the Court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice."  *EEOC v. St. Francis Xavier Parochial Schl.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  In employment discrimination

cases, courts may, and often do, take judicial notice of EEOC charges and EEOC decisions.  *See,
e.g.*, *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018).

## B.  Legal Standards for Amending a Complaint

Under the Federal Rules of Civil Procedure, once a defendant has responded to a
complaint and more than 21 days have elapsed, the plaintiff may amend his or her complaint
"only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).
The grant or denial of leave to amend lies in the sound discretion of the district court.  *See
Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  However, it is to be "freely given
when justice so requires."  *Id.*  For where "the underlying facts or circumstances relied upon by a
plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim
on the merits."  *Foman v. Davis*, 371 U.S. 178, 181– 82 (1962) (cautioning that the pleading
phase should not be turned into a "game of skill in which one misstep by counsel may be
decisive to the outcome") (quotation omitted).  Accordingly, leave to amend should be denied
only if the court determines there to be a sufficient reason such as futility of amendment, undue
delay, bad faith, dilatory motive, undue prejudice or repeated failure to cure deficiencies by
previous amendments.  *Id*.; *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d
1080, 1083 (D.C. Cir. 1998).

## IV.  ANALYSIS

### A.  Ms. Robb's Motion to File Amended Complaint

Ms. Robb has moved for leave to file an amended complaint.  The proposed amended
complaint does the following:

> (a) it removes the individual defendants (b) it removes any reference to the First
> Amendment, (c) it removes the proposed fourteen (14) day suspension claim; (d)
> it adds two claims of additional actions in April, 2019; and (e) it corrects

paragraph #224, in that the Plaintiff filed additional complaints, rather than
Amended Complaints.

Pl.'s Mot. Amend at 3.  These two new April 2019 actions include the previously

described denial of Ms. Robb's request to complete a graduate school certificate program and the

purported falsification of her time-sheet, that deprived Ms. Robb of eighteen hours of leave.

Am. Compl. ¶¶ 158–160.

The Secretary opposes this motion to amend, arguing that the two new April 2019 claims

should be denied on futility grounds, for largely the same exhaustion issues and failure to

constitute an adverse employment action arguments raised in his motion to dismiss.  Def.'s

Opp'n Amend at 6–7.  The Secretary does not, however, appear to challenge the other

modifications made in the proposed amended complaint, including the removal of certain

defendants and claims, as well as the minor correction made to a certain paragraph.

Setting aside for a moment the two new (and opposed) April 2019 claims, the Court finds

that it is in the interest of justice to grant Ms. Robb's request to amend as to the remainder of her

proposed amended complaint, in consideration of all relevant factors and in light of the lack of

opposition.  She seeks leave to correct pleading errors, and to remove claims she no longer

wishes to pursue.  Given that this case is still in its beginning stages, and allowing these small

amendments will not prejudice the Secretary, there is no sufficient reason to deny this request.

*See, e.g.*, *Norris v. Salazar*, 746 F. Supp. 2d 1, 4 (D.D.C. 2010) (granting leave to amend the

complaint where, "because of the early stage of the litigation, any delay would be minimal" and

"[D]efendant would not be unduly prejudiced"); *Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C.

2006) (finding no prejudice to defendants where amendment would not "unduly increase

discovery or delay the trial, and when the opponent could not claim surprise") (citation omitted).

The Court turns next to the two April 2019 incidents Ms. Robb seeks to add to her complaint that the Secretary opposes on futility grounds.  As is relevant here, "[c]ourts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss." *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) (citing *Foman*, 371 U.S. at 181–82).  In other words, "review for futility 'is, for practical purposes, identical to review of a Rule 12(b)(6)' motion to dismiss." *Driscoll v. George Washington Univ.*, 42 F. Supp. 3d 52, 57 (D.D.C. 2012) (quoting *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 215–16 (D.C. Cir. 2010); *see also DC2NY, Inc. v. Acad. Bus, LLC*, No. 18-cv-2127, 2020 WL 1536219, at *16 (D.D.C. Mar. 31, 2020) (noting that "the defendant's opposition on grounds of futility of amendment functions as a motion to dismiss").

Consequently, in deciding whether to grant Ms. Robb's Motion to Amend in full, the Court must consider the merits of the proposed amended complaint.  In doing so it will also incorporate the arguments provided by both parties in the motion to dismiss briefing, given that the relevant standard of review is identical.

## B.  12(b)(6) Motion to Dismiss and Futility Analysis of Ms. Robb's Proposed Amended Complaint

The Secretary has moved to dismiss Ms. Robb's complaint in part, citing a number of deficiencies.  He argues first that several of Ms. Robb's claims have not been administratively exhausted, as required.  *See* Def.'s Mot. at 1, 6–9.  Second, he contends that Ms. Robb cannot challenge the suspension of her security clearance.  *See id.* at 1, 9–11.  Third, he claims that Ms. Robb has not plead that she suffered materially adverse acts of employment discrimination or retaliation sufficiently adverse to maintain a suit under either Title VII or the Rehabilitation Act. *See id.* at 1, 11–14.  In opposing Ms. Robb's amended complaint, the Secretary continues to take

issue with these identified deficiencies, and also contends that the two new April 2019 claims

concerning Ms. Robb's graduate school program denial and timesheet falsification are futile as

they were not properly administratively exhausted.  Def.'s Opp'n Amend at 7.  The Court

reviews each argument in turn.

1. The Secretary Has Not Shown that Ms. Robb Failed to Properly Exhaust her Administrative

Remedies under the Rehabilitation Act and Title VII[4]

The Court begins with the Secretary's argument that several of Ms. Robb's claims cannot

proceed due to a failure to exhaust administrative remedies.  The Secretary contends that Ms.

Robb's claims concerning her February 2019 five-day suspension, a February 13, 2019 incident

involving a broken keyboard, the April 3, 2019 graduate program training denial, and the

---

[4] The Court considers the Secretary's exhaustion arguments, many of which reference
exhibits attached to both the original complaint and the Secretary's Motion to Dismiss, without
converting this motion to dismiss into one for summary judgment.  This is because, particularly
within the context of exhaustion, "courts consider documents attached to motions to dismiss and
opposition papers without converting the motion into one for summary judgment when the
documents were referenced in the Complaint and were central to the plaintiff's claim." *Slate v.
Pub. Defender Serv. for the District of Columbia*, 31 F. Supp. 3d 277, 287–88 (D.D.C. 2014)
(reviewing on motion to dismiss without converting to summary judgment the EEO complaint
filed by plaintiff, letter placing plaintiff on administrative leave with pay, and public arrest
record).  As is of particular relevance here, courts may consider "documents 'upon which the
plaintiff's complaint necessarily relies' even if the document is produced not by the plaintiff in
the complaint but by the defendant in a motion to dismiss." *Pearson v. District of Columbia*, 644
F. Supp. 2d 23, 29 n. 1 (D.D.C. 2009), *aff'd*, 377 Fed. App'x. 34 (D.C. Cir. 2010) (considering
without converting to summary judgment several exhibits attached to defendant's motion to
dismiss and mentioned in the complaint, including memoranda, emails, and letters); *Vasser v.
McDonald*, 228 F. Supp. 3d 1, 11 (D.D.C. 2016) (considering plaintiff's administrative
complaints, including informal complaint "as written by the EEO counselor during her initial
interview" without converting motion); *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C.
1999) (concluding that "the various letters and materials produced in the course of plaintiff's
discharge proceeding," which were attached to plaintiff's opposition papers, could properly be
considered without converting the motion to one for summary judgment); *Marshall v. Honeywell
Tech. Sols., Inc*., 536 F. Supp. 2d 59, 65 (D.D.C. 2008) (considering documentary exhibits and
affidavits filed with motion to dismiss in context of exhaustion challenge without converting
motion to one for summary judgment).

purported time sheet falsification were not properly exhausted through the required administrative process.  Def.'s Mot. at 6; Def.'s Opp'n Amend at 2.[5]  Ms. Robb disputes this characterization of events, arguing that she raised these complaints with her Equal Employment Opportunity ("EEO") counselor, thus fulfilling her exhaustion obligations.  Curiously, the Secretary does not address this argument in his Reply.  The Court finds, for the reasons listed below, that Ms. Robb has the better of this argument.

Generally, before plaintiffs can bring suit in federal court alleging discrimination in federal employment, they first "must proceed before the agency charged with discrimination." *Bayer v. U.S. Dep't of Treasury*, 956 F.2d 330, 332 (D.C. Cir. 1992).  This exhaustion requirement mandates that federal "[e]mployees who allege discrimination . . . consult with an agency EEO counselor before filing a written complaint with the agency accused of discriminatory practice."  *Pearsall v. Holder*, 610 F. Supp. 2d 87, 95 (D.D.C. 2009); *see also Doak v. Johnson*, 798 F.3d 1096, 1104 (D.C. Cir. 2015) (noting that cases brought pursuant to Title VII and the Rehabilitation Act are subject to "the same administrative time limit" for exhaustion).  "The purpose of the [administrative exhaustion doctrine] is to afford the agency an opportunity to resolve the matter internally and to avoid unnecessarily burdening the courts." *Peters v. District of Columbia,* 873 F. Supp. 2d 158, 180 (D.D.C. 2012) (citing *Artis v. Bernanke*, 630 F.3d 1031, 1034 (D.C. Cir. 2011) (alteration in original)).  Accordingly, any potential plaintiff alleging discrimination in federal employment is required to contact and confer with an

---

[5] While the Secretary initially moved to dismiss several other of Ms. Robb's claims on this same ground, including the March 2019 proposed suspension, the April 2019 clearance suspension, and the March 2020 proposed termination, *see* Def.'s Mot. at 6, Ms. Robb has since clarified in her briefing and proposed amended complaint that she is no longer pursuing these allegations as discrete claims, *see* Pl.'s Opp'n at 9 n.2.

EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1).[6]  Failure to comply with exhaustion requirements requires dismissal of the claim.  *See, e.g., Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C. Cir. 2003) (holding that "timely exhaustion of administrative remedies is a prerequisite to a Title VII action against the federal government," and dismissing untimely claim); *Raines v. Dep't of Justice*, 424 F. Supp. 2d 60, 67 (D.D.C. 2006) (dismissing wrongful termination claim "[b]ecause the plaintiff did not contact an EEO counselor within the 45 days of the alleged wrongful termination").  Failure to exhaust is an affirmative defense, and thus the burden of demonstrating untimely exhaustion of administrative remedies rests with the Secretary.  *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).

   The Secretary contends that Ms. Robb failed to exhaust the four claims described above, arguing that when Ms. Robb sought to file these additional 2019 claims while her original EEOC action was already pending, she failed to "either file [an] amended request with the administrative judge or pursue a new complaint with an EEO counselor within 45 days" of the date of the new, allegedly discriminatory and/or retaliatory acts.  Def.'s Reply at 3.  But the record shows that Ms. Robb did indeed meet the 45-day requirement for reporting new acts of discrimination or retaliation, as the Court will now recount.

---

[6] After this initial consultation with an agency EEO counselor, an aggrieved employee can proceed with filing a written complaint, which must be filed "within 15 days of the receipt of notice" from the counselor.  *See* 29 C.F.R. § 1614.105(a); 29 C.F.R. § 1614.106(a)-(c). After a complaint is filed, the agency will investigate the allegations, *see* 29 C.F.R. § 1614.106(e)(2). Once the investigation is complete, the complainant decides if they would like to have the agency make a final decision or instead if they would prefer to have a hearing before an administrative judge before the agency takes its final action.  *See* 29 C.F.R. §§ 1614.108(f), 1614.110(a).

Ms. Robb filed her original complaint on March 2, 2018, *see* Am. Compl. ¶ 214, and the matter was referred for investigation five months later on August 10, 2018.  In the Spring of 2019, after the investigation into her original complaints had concluded and the case was pending before an administrative law judge, Ms. Robb sought to file new claims that she considered to be additional acts of discrimination and/or retaliation against her.  These additional acts included a February 2019 five-day suspension, a February 13, 2019 incident regarding a broken keyboard at her workstation, an April 3, 2019 training denial, and an April 2019 alleged falsification of her time sheet that deprived her of accrued leave time.  These incidents were largely reported to the Department's EEO staff in two waves: first, on March 26, 2019 by Ms. Robb's attorney, and then on May 12, 2019 by Ms. Robb herself.  *See* Compl. Ex. 1 ("Mar. 26, 2019 Letter"), ECF No.1-1; Def.'s Mot. Ex. 14 ("May 12, 2019 Email"), ECF No. 8-15.  The Department appears to have interpreted the reporting of these additional incidents as an attempt by Ms. Robb to amend her pending complaint, and consequently denied these requests in two letters issued on May 3, 2019 and May 15, 2019.  *See generally* Def.'s Mot. Ex. 16 ("May 3, 2019 Denial Letter"), ECF No. 8-17; Def.'s Mot. Ex. 17 ("May 15, 2019 Denial Letter"), ECF 8-18.  The Department explained in these letters that pursuant to 29 C.F.R. 1614.106(d), Ms. Robb could no longer amend her complaint, because "the investigation of this matter had concluded and the Report of Investigation (ROI) had been issued."  May 3, 2019 Denial Letter at 2; May 15, 2019 Denial Letter at 2.  The letter directed Ms. Robb to instead either file a motion with the Administrative Law Judge overseeing her EEOC hearing to amend her pending action, or to file a new complaint with her EEO officer.  *Id.*  The Secretary contends that Ms. Robb did not "follow either directive," sitting on her rights and effectively depriving the agency of an opportunity to resolve this matter internally.  Def.'s Reply at 3.

This characterization is not, however, an accurate reflection of what occurred, as a review of the relevant exhibits shows that Ms. Robb and her counsel had previously complied with the 45-day notification requirement.  For the March 26, 2019 Letter sent by Ms. Robb's counsel timely notified the Department's EEO office of both the February 25, 2019 five-day suspension and the February 13, 2019 issue regarding a broken keyboard, explicitly stating that the EEO counselor should "consider this letter . . . as meeting the 45-day deadline to contact an EEO Officer with respect to the latest retaliation complaints by my client, Farhan Robb."  March 26, 2019 Letter at 1.  Similarly, Ms. Robb herself emailed the Department's Office of Civil Rights on May 12, 2019, also making a timely reporting of her allegation that her time sheet was falsified in April of 2019 in another act of retaliation or discrimination.  *See* May 12, 2019 Email at 1 (stating that she "had another complaint to make").  Finally, while the record does not contain the specific correspondence reporting the April 3, 2019 training denial, the May 3, 2019 Denial Letter notes that the Department's EEO office had been informed of this allegation by, at the latest, April 29, 2019.  *See* May 3, 2019 Denial Letter at 1.  Consequently, this incident had also been reported well within the required 45-day notification window.  In sum, the Court concludes that contrary to the Secretary's assertions, Ms. Robb fulfilled the administrative exhaustion requirements of 29 C.F.R. § 1614.105(a)(1) by contacting her EEO counselor "within 45 days" of the incidents to report what she believed to be discriminatory and/or retaliatory action.[7]

---

[7] It bears noting that nothing in Ms. Robb's or her counsel's correspondence notifying the appropriate individuals of these new events stated that Ms. Robb wished to amend her pending complaint.  Rather, both documents simply stated that she had new complaints to report.  *See* March 26, 2019 Letter at 1 (noting that the letter contained Ms. Robb's "latest retaliation complaints"); May 12, 2019 Email at 1 ("I also have another complaint to make.").

Indeed, the text of the denial letters themselves supports this conclusion.  Both of the amendment denial letters explained that if Ms. Robb wished to file a new complaint, she would be required to contact an EEO Counselor within 45 calendar days of the alleged discriminatory act, and engage in the EEO counseling process.  *See* May 3, 2019 Denial Letter at 5; May 15, 2019 Denial Letter at 2.  However, the letters went on to note that, "[b]y copy of this letter, we are informing the agency EEO office of this matter.  <u>However, it is the Complainant's responsibility to seek counseling regarding these claims within 15 calendar days of her receipt of this letter, if she wishes to file a formal complaint.</u>"  May 3 Denial Letter at 3; May 15 Denial Letter at 2 (emphasis in original).  The Court interprets this language, "by copy of this letter, we are informing the agency EEO office of this matter," as conveying that the 45-day notification requirement had been fulfilled.  Indeed, the emphasized language directing Ms. Robb to seek counseling implies that this step is all that remains for her to complete.

And this step does appear to have been accomplished.  Ms. Robb represents that she did not receive either denial letter until May 25, 2019, and that she promptly contacted her EEO Counselor five days later, thus fulfilling her administrative requirements.  Pl.'s Opp'n at 11; *see also* Ex. 1 to Pls.' Opp'n ("June 1, 2019 Email"), ECF No. 15-5.  Ms. Robb's June 1, 2019 email to her EEO counselor states, "[p]lease consider all of the items from the May 2 and May 15 letter as new informal complaints since the ROI closed."  June 1, 2019 Email at 1.  There is no record that her counselor followed up in any capacity, such as by stating that additional notice was required to process her claim.  *See Bowden*, 106 F.3d at 438 ("Like other courts, we have excused parties who were misled about the running of a limitations period, whether by . . . a government official's advice upon which they reasonably relied, or by inaccurate or ineffective notice from a government agency required to provide notice of the limitations period[.]")

(citations omitted). While Ms. Robb did not make a specific request for counseling, the Court

finds that this prompt outreach to her EEO officer arguably met this requirement here,

particularly because this requirement to request counseling within 15 days does not appear, as

Ms. Robb notes, to be premised on any binding EEOC regulation. Additionally, the Secretary

brings no argument for failure to exhaust on this ground, having asserted only that Ms. Robb was

deficient in failing to initiate contact with an EEO officer within 45 days of the allegedly

discriminatory events. Def.'s Mot. at 7; Def.'s Reply at 2. As the Court has already detailed,

this contention is incorrect. The burden rests on the Secretary to "allege facts reasonably

establishing a prima facie showing of nonexhaustion." *Brown v. Marsh*, 777 F.2d 8, 13 (D.C.

Cir. 1985). He has not done so here, and accordingly, the Court denies the Department's motion

to dismiss for failure by Ms. Robb to exhaust her administrative remedies as to these four claims.

### 2. Ms. Robb No Longer Challenges the Revocation of her Security Clearance

In the Secretary's original motion to dismiss, he challenged Ms. Robb's claim contesting

the suspension of her security clearance, asserting that such a claim is nonjusticiable under

governing law. Def.'s Mot. at 9–11. Perhaps in response, Ms. Robb's opposition brief informed

the Court that she "is no longer pursuing a claim" regarding the "security clearance revocation."

Def.'s Opp'n at 9 n.2. Ms. Robb's proposed amended complaint reflects this change, meaning

no further action is needed on this issue by the Court at this time.

### 3. Ms. Robb's Fifth Amendment Claim

The Secretary also contends that Ms. Robb has in effect abandoned her Fifth Amendment

claim involving loss of reputation, despite it being preserved in her proposed amended

complaint. Somewhat surprisingly, Ms. Robb, after defending this claim in her opposition to the

Secretary's Motion to Dismiss, concedes in a footnote in her Reply in Support of her Motion to

Amend that she "is no longer pursuing this Fifth Amendment issue." Pl.'s Amend Reply at 1 n.1. The Court will respect Ms. Robb's wishes, and consequently will dismiss her Fifth Amendment claim in full.

### 4. Ms. Robb's Discrimination and Retaliation Claims

Finally, the Secretary seeks to dismiss a handful of Ms. Robb's claims of discrimination and retaliation on the basis that they are not adverse employment actions, and thus do not properly state a claim under Title VII or the Rehabilitation Act. Def.'s Reply at 4. Unsurprisingly, Ms. Robb disputes this assertion. *See* Pl.'s Opp'n at 12–13. The Court will review each contested action in turn.

First, however, a review of the relevant legal standards is in order. To bring a claim of discrimination in federal employment, as Ms. Robb seeks to do here, a plaintiff must properly allege that she has suffered an adverse employment action. *See Douglas v. Donovan,* 559 F.3d 549, 552 (D.C. Cir. 2009).[8] An adverse employment action, in the context of a discrimination claim, is one that involves "a *significant* change in the employment status, such as hiring, firing, failure to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* (emphasis added) (quoting *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003)). For the first four examples—hiring, firing, failure to promote

---

[8] The Secretary only challenges the sufficiency of this element of the claim, and does not dispute that Ms. Robb has adequately alleged the other requisite elements of either her discrimination or retaliation claims. *See, e.g., Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007) (noting that a prima facie discrimination claim requires that the plaintiff be (1) "a member of a protected class;" (2) have "suffered an adverse employment action;" and (3) that "the unfavorable action gives rise to an inference of discrimination."); *Howard R.L. Cook & Tommy Shaw Found. Black Emps. of Library of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013) (requiring for a prima facie retaliation claim that the plaintiff allege that they (1) engaged in statutorily protected activity; (2) suffered a materially adverse employment action, and (3) that a causal link connects that adverse action to the statutorily protected activity.).

or reassignment with significantly different responsibilities—because "it is obvious that each significantly changes an employee's status," these types of decisions "are conclusively presumed to be adverse employment actions." *Id.* at 552–53. In contrast, when a plaintiff seeks to bring a claim that falls outside these categorical examples by arguing that she has suffered an employment action that has caused her "a significant change in benefits," the employee "must go the further step of demonstrating how the decision nonetheless caused . . . an objectively tangible harm." *Id.* at 553; *see also Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002) (noting that an objectively tangible harm is present when a reasonable trier of fact could find that the plaintiff "experience[d] materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities"). This tangible harm requirement "guards against 'judicial micromanagement of business practices' and 'frivolous suits over insignificant slights.'" *Cogdell v. Murphy*, No. 19-cv-2462, 2020 WL 6822683, at *8 (D.D.C. Nov. 20, 2020) (citations omitted).

Retaliation claims are subject to a "somewhat broader," standard. *Baird v. Gotbaum*, 662 F.3d 1246, 1250 (D.C. Cir. 2011); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) ("[W]e conclude that Title VII's substantive provision and its antiretaliation provision are not coterminous. The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm."). Consequently, an allegedly retaliatory employment action will be considered materially adverse if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68 (internal quotation marks and citation omitted); *see also Mogenhan v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010) (noting that the D.C. Circuit "applie[s] the Burlington Northern standard to retaliation claims under the Rehabilitation Act as well as Title

VII"). This burden "is not great" as a plaintiff "need only establish facts adequate to permit an inference of retaliatory motive." *Turner v. United States Capitol Police Bd*., 983 F. Supp. 2d 98, 107 (D.D.C. 2013) (quoting *Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001)). However, "not everything that makes an employee unhappy is an actionable adverse action," as "petty slights" and "minor annoyances" are not actionable under Title VII's retaliation provisions. *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (quoting *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001)).

The Court will now analyze each of the incidents challenged by the Secretary to see if Ms. Robb has properly plead the adverse actions required for her discrimination and retaliation claims to proceed.

### a. Reduction in Workplace Responsibilities

The first category of claim in question concerns Ms. Robb's allegation that she had her job responsibilities reduced in an effort to impede her ability to regain her GS-14 position. Pl.'s Opp'n at 12. She asserts that this was accomplished by the following actions:

> (a) being left out of a key ethanol meeting, August 1, 2017; (b) two China ethanol taskers were completed in May, 2018, without Plaintiff's usual participation; (c) a significant reduction in Plaintiff giving expert scientific and policy advice regarding emerging biofuels and bioenergy issues; (d) representing the agency on biofuels and bioenergy in international meetings; (e) representing the agency as a technical expert at meetings with other agencies; (f) participating in educational seminars; (g) consulting with staff of domestic and foreign industry and trade associations.

Am. Compl. ¶ 38.[9]

---

[9] Ms. Robb provides more detail later in her amended complaint on these changes in her speaking engagement and training opportunities, alleging that the Department prevented her from attending: "a) a Brazil Biofuture Platform speaking invitation; (b) a February 14, 2017, meeting with the Minnesota Bio-Fuels Association; (c) travel to Mexico and Canada in April, 2017; (d) travel to a Thailand APEC event in March, 2017; (e) participation in Capitol Hill hearings in June, 2017; (f) serving as a session speaker at a Fuel Ethanol Workshop conference

The Secretary argues in response that these "standard adjustment of work assignments" "are not sufficiently adverse to give rise to a cause for discrimination or retaliation." Def.'s Reply at 4. The Court disagrees, for the reasons detailed below.

Beginning with Ms. Robb's discrimination claim, generally "changes in assignments and work-related duties do not ordinarily constitute adverse employment actions if unaccompanied by a decrease in salary or work hour changes." *Mungin v. Katten, Muchin & Zavis*, 116 F.3d 1549, 1557 (D.C. Cir. 1997). Notably, "[p]urely subjective injuries, such as dissatisfaction with reassignment, public humiliation or loss of reputation, or unhappiness over assigned duties are not adverse actions." *Burton v. Batista*, 339 F. Supp. 2d 97, 110 (D.D.C. 2004) (citing *Forkkio*, 306 F.3d at 1130–31). Rather, in order to plead an adverse action claim based on a reduction in one's duties or workload, "a plaintiff must show that the change in work resulted in a loss of pay, benefits, or promotion possibilities." *Bruder v. Chu*, 953 F. Supp. 2d 234, 241 (D.D.C. 2013). In short, because this type of injury falls outside of the prototypical adverse employment actions of hiring, firing, failure to promote, or reassignment, Ms. Robb must show that this action caused her an objectively tangible harm. *See Forkkio*, 306 F.3d at 1131.

Ms. Robb has met this pleading burden here. She alleges that the revocation of several of her various work responsibilities was "designed to stop her from obtaining her GS-14 position she once had," Pl.'s Opp'n at 12, in effect pleading a loss of promotion possibility. As already detailed, this is one of the ways by which a reduction in work duties can rise to the level of an adverse action. *See Bruder*, 953 F. Supp. 2d at 241. Reinforcing this conclusion is that other

---

in Minnesota; and (g) travel to Paraguay as a speaker at the Food and Agriculture Organization at a United Nations workshop." Am. Compl. ¶ 54. To be clear, the Court interprets these actions (as well as the other reductions in her workplace responsibilities) not as discrete claims but rather examples of the method by which the alleged adverse action of failure to promote Ms. Robb back to the GS-14 level was carried out.

courts in this District have found this type of loss to be a qualifying "objectively tangible harm"

such that Ms. Robb's claim can survive. *See Albert v. Perdue*, No. 17-cv-1572, 2019 WL

4575526, at *11 (D.D.C. Sept. 20, 2019) (finding that plaintiff's pleading that his "lighter

caseload" compared to colleagues deprived him of relevant experience, "thereby reducing his

promotion potential" was sufficient to allege an adverse action); *Gasser v. Ramsey*, 125

F.Supp.2d 1, 5 (D.D.C. 2000) (determining that lost promotional opportunity due to plaintiff's

reassignment from the field to a desk job was sufficiently material to constitute adverse

employment action). Construing the proposed amended complaint in the light most favorable to

Ms. Robb, as the Court must at this stage, the Court finds that her allegations that she

experienced a "significant reduction" in giving expert advice, combined with her allegation that

she was stripped of representing the Department in international meetings and with other

agencies and industry and trade associations to be such a significant reduction in important

workplace duties to reasonably have an impact on her future promotional opportunities. While a

more concrete connection between these actions and the denied promotional opportunities will

be warranted to survive further dispositive motions, the Court finds Ms. Robb has alleged just

enough to make this claim of adverse employment action plausible. Accordingly, Ms. Robb's

discrimination claim regarding the reduction in her workplace duties survives the Secretary's

motion to dismiss.

Turning next to Ms. Robb's retaliation claim premised on this same ground, the Court

notes that this issue comes down to one of the timing of the alleged materially adverse actions,

which is not immediately apparent on the face of the proposed amended complaint. Ms. Robb

alleges that she first engaged in protected activity by pursuing her reasonable accommodation

rights in August of 2017, and when she complained to the Department's EEO Office of Civil

Rights on December 14, 2017.  *See* Am. Compl. ¶¶  213, 216.  These actions postdate at least

some of Ms. Robb's alleged reductions in her job responsibilities, namely her exclusion from

certain travel and speaking engagements in the Winter and Spring of 2017, and an important

August 1, 2017 meeting.  *See id.* ¶¶ 38, 54.  Obviously, these incidents cannot be retaliation for

an event that had not yet occurred.  However, to the extent that any of Ms. Robb's complained of

changes in job responsibilities (many of which remain undated in the proposed amended

complaint) occurred after August of 2017, they would easily qualify as an adverse action for

retaliation.  As the Supreme Court has noted, "[c]ommon sense suggests that one good way to

discourage an employee . . . from bringing discrimination charges would be to insist that she

spend more time performing the more arduous duties and less time performing those that are

easier or more agreeable."  *Burlington N.,* 548 U.S. at 70–71; *see also id.* at 71 (noting that a

significant change in an employee's work assignments is "a classic and widely recognized

example of forbidden retaliation.").  In this case, Ms. Robb's assignment away from her

prestigious duties— such as the giving of expert scientific and policy advice and representing the

Department in international meetings and in meetings with other agencies or industry groups—

would be enough to meet the materially adverse standard.  *See, e.g., Lee v. Winter*, 439 F. Supp.

2d 82, 85 (D.D.C. 2006) (holding that "substantially assigning away" employee's work duties in

allegedly retaliatory act consisted materially adverse action); *Edwards v. U.S. E.P.A.*, 456 F.

Supp. 2d 72, 87 (D.D.C. 2006) (determining that allegation that plaintiff's workload was reduced

and that he was stripped of specific responsibilities sufficed to show materially adverse action);

*Prince v. Rice*, 453 F. Supp 2d 14, 29 (D.D.C. 2006) (same).  The Court concludes that for any

actions that occurred after Ms. Robb's alleged protected activity, she has sufficiently plead that

she suffered a materially adverse action to support her claims of retaliation on this ground.

### b. *Various Disciplinary Measures*

The next category of action in dispute consists of various disciplinary measures taken by the Department against Ms. Robb, in what she alleges were acts of unlawful discrimination and retaliation for her protected activity.  These events include a November 13, 2017 investigation into her conduct, the December 8, 2017 and March 8, 2018 Letters of Caution, and a May 29, 2018 Letter of Reprimand. [10]  The Secretary argues that none of these events constitute an adverse employment action.

### 1.  The Investigation and Letters of Caution

As an initial matter, Ms. Robb asserts that several of the disciplinary measures, including the November 13, 2017 investigation, as well as the December 8, 2017 and March 8, 2018 Letters of Caution are "listed in the Amended Complaint not as individual claims, but "as part of a pattern of actions connected to [Ms. Robb's] claim that her management chain attempted to keep her from regaining her GS-14 status."  Pl.'s Opp'n at 13 n.3.  With regard to Ms. Robb's discrimination claims this is likely a prudent move, as the Court notes that the November 2017 investigation as well as the Letters of Caution would indeed appear to be an insufficient basis to support discrete discrimination claims.  For only "the discipline imposed as a result of an investigation may have a sufficiently adverse effect on plaintiff's employment to be actionable, *Ware v. Billington*, 344 F. Supp. 2d 63, 76 (D.D.C. 2004), and Ms. Robb has failed to identify any such harm stemming from the investigation here, requiring dismissal.  *See Jones v. Castro*,

---

[10] The Secretary originally challenged the March 11, 2019 proposed 14-day suspension and the proposed termination as also failing to state a claim due to the underlying incident not being an adverse employment action.  *See* Def.'s Mot. at 14.  However, Ms. Robb has made clear that she "is no longer pursuing a claim" regarding these two underlying actions, *see* Pl.'s Opp'n at 9 n.2, and has updated her proposed amended complaint accordingly.  The Court thus concludes these claims are no longer at issue.

168 F. Supp. 3d 169, 180–81 (D.D.C. 2016).  Similarly, a "Letter of Caution, 'if not abusive in tone or language or a predicate for a more tangible form of adverse action will rarely constitute materially adverse action.'"  *Adams v. U.S. Dep't of the Navy*, No. 17-cv-1618, 2020 WL 2308581, at *6 (D.D.C. May 8, 2020) (quoting *Kilby-Robb v. Duncan*, 210 F. Supp. 3d 150, 161 (D.D.C. 2016)); *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008) (letter of reprimand containing only "job-related constructive criticism" was not materially adverse).  And Ms. Robb has not directly alleged that these letters of caution lead to an objectively tangible harm, such as having an impact on her "position, grade level, salary or promotion activity." *Baloch*, 550 F.3d at 1199.  Accordingly, as Ms. Robb seems to largely concede, any discrete discrimination claim premised on the November 2017 investigation or December 8, 2018 and March 8, 2018 Letters of Caution must be dismissed.  But, of course, these incidents may have evidentiary value in support of Ms. Robb's central claim that she was improperly prevented from regaining her GS-14 grade level and attendant pay.

Similarly, Ms. Robb also explicitly notes in her proposed amended complaint that she is not pursuing a retaliation claim based on these incidents.  *See* Am. Compl. at 12 n.1  ("[t]he only two individual, tangible actions or actions that would reasonably dissuade an employee from participating in EEO activity are (a) the May 29, 2018 Letter of Reprimand and (b) the five-day suspsension [sic].").  Accordingly, the Court will refrain from analyzing either event under the retaliation standard as Ms. Robb has conceded the futility of these claims, and clearly no longer wishes to bring them in her amended complaint.

### 2.  May 29, 2018 Letter of Reprimand:

The Court turns next to the May 29, 2018 Letter of Reprimand issued to Ms. Robb, purportedly for calling two different coworkers a "bitch."  Ms. Robb contends that this incident

was entirely fabricated by the Department in an act of discrimination and/or retaliation against
her.  She disputes the Secretary's claim that this May 29, 2018 Letter of Reprimand cannot
properly be considered an adverse action, arguing that the letter caused her tangible harm
because it was later "relied upon in [her] termination notice."  Pl.'s Opp'n at 12–13.  While the
Secretary does not respond in any specific way to this argument, he contends generally that this
action, like the rest, did not involve "a significant change in [Ms. Robb's] employment status,"
and consequently does not meet the standard to qualify as an adverse action.  Def.'s Reply at 5.
The Court disagrees, at least at this stage of the litigation.

The D.C. Circuit "has held that formal criticisms or reprimands, without any additional
disciplinary action such as a change in grade, salary, or other benefits, do not constitute adverse
employment actions."  *Stewart v. Evans*, 275 F.3d 1126, 1136 (D.C. Cir. 2002).  Critically, even
the "possibility of a formal disciplinary action in the future" is also not enough to show the
required objectively tangible harm.  *See Coleman v. Dist. of Columbia*, No. 04-cv-1325, 2006
WL 2434926, at *4 (D.D.C. Aug. 22, 2006); *see also Russell*, 257 F.3d at 819–20 (stating that an
"unrealized risk of a future adverse action, even if formalized, is too ephemeral to constitute an
adverse employment action.").  However, as plead by Ms. Robb, she did not face the "risk" or
"possibility" of a future adverse action, but actually experienced an adverse employment action
in the form of her subsequent proposed termination.  Ms. Robb asserts in her amended complaint
that the termination notice she was issued in 2020 listed this prior letter of reprimand as a reason
for her dismissal.  Pl.'s Opp'n at 12; *see also* Am. Compl. ¶ 229 ("One of the key factors
justifying [Ms. Robb's] proposed termination was the aforementioned discipline.").  It is
undisputed that a termination is an adverse action, as it is a significant change in one's
employment status that causes obvious tangible harm.  *See Durant v. D.C. Gov't*, 875 F.3d 685,

698 (D.C. Cir. 2017); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 808 (1998))
(specifically identifying "discharge, demotion, or undesirable reassignment" as three types of a "
tangible employment action.").  Construing the amended complaint in a light most favorable to
Ms. Robb, the Court concludes that she has adequately plead that the May 29, 2018 Letter of
Reprimand was a building block that would lead to an objectively tangible harm—her ultimate
termination.  *See Brett v. Brennan*, 299 F. Supp. 3d 63, 73 (D.D.C. 2018) (holding that
suspensions "that were later used as ground for approving [a plaintiff's] termination" constituted
adverse employment actions).  While the causal connection between the letter and the ultimate
harm (if it occurred) may ultimately be found too tenuous to support this claim, the Court finds
that at this stage her allegations, which were largely ignored by the Secretary, are sufficient to
survive this motion to dismiss.  *See Munro v. LaHood*, 839 F. Supp. 2d 354, 363 (D.D.C. 2012)
("Despite these doubts as to whether plaintiff will ultimately be able to prove that he suffered an
adverse employment action, the Court finds that plaintiff's allegations are sufficient to survive a
motion to dismiss."); *Craig v. Dist. of Columbia.*, 881 F. Supp. 2d 26, 34 (D.D.C. 2012) (same).

Turning next to Ms. Robb's claims of retaliation, the Court must ask if the letter of
reprimand was such that it would "have dissuaded a reasonable employee from engaging in
protected activity." *Durant,* 875 F.3d at 698; *Wade v. Dist. of Columbia*, 780 F. Supp. 2d 1, 17
(D.D.C. 2011) ("a reprimand is generally not actionable as retaliation unless there is some
evidence that it caused material harm to the employee.").  As was the case in the context of a
discrimination claim, in the retaliation context as well a "termination clearly constitutes an
adverse employment action." *Davis v. Gables Residential/H.G. Smithy*, 525 F. Supp. 2d 87, 100
(D.D.C. 2007).  This is because, quite sensibly, "[a] credible threat of termination might well
dissuade a reasonable employee from pursuing a charge of discrimination." *Ali v. D.C. Gov't*,

810 F. Supp. 2d 78, 89 (D.D.C. 2011) (citing *Burlington N.*, 548 U.S. at 73); *Rhodes v. Napolitano*, 656 F. Supp. 2d 174, 185–86 (D.D.C. 2009) (holding that a misconduct investigation that resulted in a letter threatening the plaintiff with various discipline including termination was materially adverse). Ms. Robb asserts that this disciplinary letter actually led to tangible harm to her employment—a claim borne out by her later termination notice. Accordingly, it would have dissuaded a reasonable employee from engaging in protected activity, also meeting the materially adverse standard required for retaliation claims. The May 29, 2018 Letter of Reprimand thus meets the adverse action standard for both Ms. Robb's discrimination and retaliation claims based on this Letter of Reprimand.

### c. *Denial of Graduate School Training*

The Secretary also argues that the denial of Ms. Robb's request to complete a Graduate School certification program in Federal Human Resources Management does not meet the requisite adverse action standard. Ms. Robb disagrees, claiming that the denial had a material impact on her employment status because the "certification would have aided [her] in regaining her GS-14 because GS-14 positions typically involve supervising direct reports," making this kind of expertise "very relevant to this supervision." Pl.'s Opp'n at 13–14; *see also* Am. Compl. ¶¶ 158–59. The Court agrees that, at this stage of the case, this is enough to state a plausible claim.

"A denial of a training opportunity is not an adverse employment action unless it 'affected some material change in [the employee's] employment conditions, status or benefits.'" *Walker v. Mattis*, 319 F. Supp. 3d 267, 276 (D.D.C. 2018) (quoting *Lester v. Natsios*, 290 F. Supp. 2d 11, 29 (D.D.C. 2003)); *Santa Cruz v. Snow*, 402 F. Supp. 2d 113, 128 (D.D.C. 2005) (denial of approval for university self-study course not an adverse action where plaintiff

provided no evidence that denial adversely affected his grade, salary, work responsibilities, promotional opportunities, or other material conditions of his employment).  Ms. Robb has—barely—alleged facts sufficient to establish that the Department's denial of her request to attend graduate school courses caused a material change in her promotional opportunities, a position that was not contested by the Secretary.  As already described, Ms. Robb claims that these courses in Federal Human Resources Management "would have aided [her] in regaining her GS-14" status.  Am. Compl. ¶¶ 158–59.  While arguably this assertion is somewhat speculative, she is able to overcome this hurdle by providing the explanation that "GS-14 positions typically involve supervising direct reports," *id.*,  meaning that this additional training in this specific area would make her more competitive for GS-14 roles.  *Compare with Casey v. Mabus*, 878 F. Supp. 2d 175, 184 (D.D.C. 2012) (dismissing claim as speculative where plaintiff alleged only that instructor certification "would have increased her potential for career advancement" noting the need for facts "to demonstrate how these added trainings would have materially affected her employment.").  Because Ms. Robb has alleged at least *some* facts to explain why the training denial impacted her ability to obtain a future promotion, for now she has met her pleading requirement here.

For the same reasons Ms. Robb's retaliation claim premised on the training denial survives the Secretary's motion to dismiss.  The materially adverse action standard for retaliation claims is a "lower" bar than that governing discrimination claims, and requires that a plaintiff allege that she has faced "material adversity—such as . . . the loss of future advancement opportunities" arising from the training request denial.  *Jimenez v. McAleena*n, 395 F. Supp. 3d 22, 39 (D.D.C. 2019).  This is precisely the sort of "material adversity" Ms. Robb has plead here, and accordingly, her retaliation claim also survives.

### d. Alleged Improper Reduction in Ms. Robb's Leave

The last employment action in dispute is Ms. Robb's allegation that the Department falsified her calendar year 2019 pay period number eight timesheet, depriving her of sixteen hours of annual leave and two hours of travel leave. *See* Pl.'s Opp'n at 14 (citing Am. Compl. ¶ 160). She argues that this leave should have properly been classified as Paid Administrative Investigative Leave, and the charge in effect deprived her of leave valued at approximately $1,108.88. *Id.* The Court finds that this action can properly be considered an adverse action, for the reasons that follow.

The D.C. Circuit has held that a "diminution in pay or benefits can suffice" to constitute an adverse action, even in cases where the employer later provides back pay. *Greer v. Paulson*, 505 F.3d 1306, 1317 (D.C. Cir. 2007); *Douglas*, 559 F.3d at 552 (evaluating action's impact on "employee's grade or salary" to determine if actionable adverse action present). While in the form of leave, the Court finds that the $1,108.88 at issue here is both a significant and objectively tangible harm. Ms. Robb alleges that she has been deprived of over a thousand dollars in benefits. This allegation is sufficient to show a tangible action affecting the terms, conditions or privileges of her employment exists. *See Chien v. Sullivan*, 313 F. Supp. 3d 1, 15 (D.D.C. 2018) (noting that "all that is required at the motion to dismiss stage" to find a tangible employment action is the "alleged loss of monetary benefits"); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998) ("[a] tangible employment action in most cases inflicts direct economic harm.").[11] Accordingly, the Court finds that this discrimination claim also survives Defendant's motion to dismiss.

---

[11] While another court in this District declined to find a similar allegedly incorrect deduction of leave to constitute a materially adverse action, it did so on the grounds that the 3.5

Ms. Robb's retaliation claim based on this same underlying event also easily meets the materially adverse standard, as "[a]dverse actions' in the retaliation context encompass a broader sweep of actions than those in a pure discrimination claim."  *Baloch*, 550 F.3d at 1198 n.4.  To this point—Ms. Robb contends that she was wrongfully deprived of her accrued leave as retaliation for her protected activity.  Interference with one's income is certainly sufficient to "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68; *see also Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009) (noting "temporary deprivation of wages counts as a materially adverse action" for retaliation claims).  Consequently, this claim also survives.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to Amend (ECF No. 16) is **GRANTED IN PART** and **DENIED IN PART,** and Defendant's Motion to Dismiss (ECF No. 8) is **GRANTED IN PART** and **DENIED IN PART.**  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 19, 2021                                                    RUDOLPH CONTRERAS
                                                                                   United States District Judge

---

hours of sick leave at issue was only a trivial harm that did not rise to the level of material adversity.  *See Bowe-Connor v. Shinseki*, 923 F. Supp. 2d 1, 9 (D.D.C. 2013).  In contrast, here Ms. Robb alleges the loss of eighteen hours of leave, valued at over a thousand dollars.  The Court believes this difference is significant enough to render the benefit at issue more than a trivial harm at this early stage of proceedings.